IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IDEARC MEDIA CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-223-M |
| | § | |
| ENCORE MARKETING GROUP, INC.; | § | |
| CRAIG STAPEL; ROBERT WEINROTH; | § | |
| ANGELO NARVAEZ; RADRIAN | § | |
| AUSTIN and SAMANTHA HOLSCLAW, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Encore Executives' Motion to Compel Arbitration [Docket Entry #92] and Defendant Radrian Austin's Motion to Compel Arbitration [Docket Entry #94]. The Motions are **GRANTED**.

*Background*

Plaintiff Idearc Media Corp. ("Idearc") owns and operates Superpages.com, an online search and directory service. Idearc raises revenue by selling advertising on Superpages.com. Encore Marketing Group, Inc. ("Encore") is in the business of finding companies that are interested in advertising on the internet and pairing them with companies that sell such advertising. In January 2006, and again in January 2007, Idearc contracted for Encore to sell internet advertising on Superpages.com to small and medium size companies ("the Agreement"). Under the Agreement, Idearc was to pay Encore a commission based on Encore's monthly net sales.

According to Idearc, the Agreement was the launching pad for a massive fraud. Defendants Radrian Austin, Ilon Funderberg, and Samantha Holsclaw, three managers in

1

Encore's Atlanta office (the "Atlanta Managers"), allegedly trained Encore sales representatives in Atlanta to create fictitious sales of Idearc's advertising, in order to generate fraudulent commissions.[1] The scheme involved paying day laborers to masquerade as business owners and inducing them to make fictitious calls to Idearc. Idearc further alleges that Encore's President, Craig Stapel, its Chief Operating Officer, Robert Weinroth, and its Vice President for Sales, Angelo Narvaez, (the "Encore Executives"), all knew about the scheme and encouraged its execution. When Idearc discovered irregularities with some of Encore's invoices, it confronted the Encore Executives about tightening Encore's internal controls. The Encore Executives allegedly guaranteed Idearc that they would exercise greater supervision over Encore's sales representatives, all the while continuing to run the scheme and generating more fraudulent commissions.

Idearc filed suit against Encore, the Encore Executives, and the Atlanta Managers on February 2, 2008. In its Second Amended Complaint, Idearc asserted the following claims against the designated Defendants:

1. Breach of Contract (Encore)
2. Fraud (all Defendants)
3. Negligent Misrepresentation (all Defendants)
4. Negligence and Gross Negligence (Encore Executives)
5. Alter Ego (Stapel)
6. Breach of Express Warranty (Encore)
7. Unjust Enrichment (all Defendants)
8. Conspiracy to Defraud (all Defendants but Encore)
9. Civil RICO (Atlanta Managers)
10. Conspiracy to Commit Civil RICO (Atlanta Managers)

---

[1] Defendant Funderberg did not respond to the Complaint, and a default judgment was entered against him on October 22, 2008. Defendant Holsclaw has not appeared, nor has Plaintiff yet sought a default.

Encore filed a Motion to Compel Arbitration pursuant to an arbitration provision in the Agreement between the parties, which the Court granted on July 30, 2008. Idearc filed an interlocutory appeal of the Court's decision, but later withdrew the Motion.[2] Though they are not signatories to the Agreement, the Encore Executives, and Austin all move to compel arbitration.

*Legal Standard*

In *Grigson v. Creative Artists Agency L.L.C.*, the Fifth Circuit held, pursuant to the doctrine of equitable estoppel, that a nonsignatory may compel arbitration in two circumstances: (1) when a signatory to a written agreement must rely on the terms of that written agreement in asserting its claims against the nonsignatory, or (2) when a signatory to the contract raises allegations of substantially interdependent and concerted misconduct by the nonsignatory and one or more of the signatories to the contract.[3]

In *Westmoreland v. Sadoux*, the Fifth Circuit held that a nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories.[4] *Westmoreland* involved a claim by a minority shareholder against an individual who controlled the majority of a company's shares. The claim was that the majority shareholder had fraudulently induced the minority shareholder to sell his shares, with false representations that the corporation was struggling. The shareholder agreement contained an arbitration provision, and was signed not by the defendant, but instead by an entity controlled by him. Because the plaintiff did not seek to enforce the terms of the shareholder agreement, but instead sued for breach of other, independent duties, the court

---

[2] The parties agreed that the effect of the Court's ruling on the instant Motion would be stayed until the 5th Circuit ruled on Idearc's interlocutory appeal, but because that appeal has been withdrawn, the issue is now ripe.
[3] 210 F.3d 524, 527-28 (5th Cir. 2000).
[4] 299 F.3d 462, 466 (5th Cir. 2002).

held that the defendant could not compel arbitration. The court noted that while "an agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed, but he is personally liable if his acts breach an independent duty." The Court also noted that the defendant had chosen to interpose a liability-insulating entity between himself and the plaintiff, and had never negotiated an arbitration agreement regarding his personal liability. The *Westmoreland* court held that a nonsignatory agent seeking to compel arbitration is subject to the same equitable estoppel framework as other nonsignatories.

*Analysis*

As a preliminary matter, the Court addresses Idearc's argument that the Agreement's arbitration provision is permissive rather than mandatory, which Idearc first made in its attempt to prevent Encore from compelling arbitration. The Court rejected the argument in a July 30, 2008 Order holding that Encore was indeed entitled to arbitration.[5] Idearc's identical argument here is rejected for the same reasons. The Court now proceeds to the *Grigson* analysis.

**A. First Grigson Test**

The first basis for equitable estoppel under *Grigson* applies where a signatory (which in this case is Idearc) must rely on an agreement which contains an arbitration clause to assert claims against nonsignatories. The Court holds that the first *Grigson* prong does not apply to this case.

---

[5] Idearc has conceded the arbitration clause's validity and enforceability (apart from its claimed permissive nature), and its applicability to all claims asserted against Encore.

Courts in this district have held, for the first *Grigson* test to apply, that "*each claim must completely rely* on the terms of the agreement."[6] That is clearly not the case here. Several of Idearc's claims, such as conspiracy to defraud and civil RICO, involve duties that are different from, and in addition to, those imposed by the Agreement, and could exist even if Encore had not breached the Agreement.[7] The facts here are similar to those described by another court in this district in *Double G Energy v. AT Gas Gathering, Inc.*: "many of the Plaintiff's claims, such as fraudulent inducement and misrepresentation, presume the existence of the agreements rather than rely strictly on the language found within them."[8] Here, as in *Double G Energy*, the first *Grigson* test is not satisfied. Although Idearc incorporates in its prayer for relief other portions of the Complaint that describe the Agreement and rely on its terms, that incorporation by reference does not satisfy *Grigson's* first test, which requires strict reliance on the language of the Agreement.

**B. Second Grigson Test**

The second part of *Grigson's* holding is that when a signatory asserts substantially interdependent and concerted misconduct by a signatory and nonsignatories, arbitration may be compelled. Courts in this district have held that this second basis for equitable estoppel is satisfied when the Plaintiff "generally alleges acts against the 'Defendants' as a group."[9] Idearc does exactly this for its fraud claim, negligent misrepresentation claim,

---

[6] *Double G Energy, Inc. v. AT Gas Gathering, Inc.*, No. Civ.A 3:05-CV-0749-P, 2005 WL 1837953 at *7 (N.D. Tex. July 28, 2005) (Solis, J.) (emphasis added); *Positive Software Solutions, Inc., v. New Century Mortgage Corp.*, 259 F.Supp. 2d 531, 539-40 (N.D. Tex. 2003) (Godbey, J.) (stating that because only some claims depended on terms of agreement, first ground for equitable estoppel did not apply); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002) (stating that equitable estoppel is appropriate "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non signatory.").
[7] *See* Second Amended Complaint at 6-7.
[8] *Double G Energy*, 2005 WL 1837953 at *8.
[9] *Id.* at *9; *Positive Software*, 259 F.Supp. 2d at 540-41.

5

and unjust enrichment claim.[10] Idearc has made identical allegations against Encore and the Defendants in these three claims, thus intermixing allegations against the signatory and the nonsignatories to a degree where arbitration is appropriate. The other sections of the Second Amended Complaint reinforce this conclusion. All of the complained-of conduct was committed by Encore employees as a result of the Agreement signed by Encore.

Idearc makes several contentions in support of its argument that the Second Amended Complaint is not a "group pleading." Idearc first contends that for the second *Grigson* test to apply, *every one* of the claims must be pled against Defendants as a group, and the pleading of one claim that differentiates between the parties is enough to avoid its application. To rule that the conduct at issue is not intertwined as a matter of law because some claims were pled against the signatory alone would allow a Plaintiff to avoid *Grigson's* second test merely by calculated pleading of a single claim against only the signatory. It is evident from Idearc's pleadings that Idearc *does* make allegations of concerted misconduct by Defendants as an undifferentiated group. For example, in the Second Amended Complaint, Idearc claims it:

> [I]mplemented specific measures to prevent fraudulent sales by Encore. Yet a scheme was structured by *Defendants* to defeat Idearc's safeguards. That scheme had no natural stopping point, and if Idearc had not uncovered and stopped *Defendants'* plan, the scheme would have continued indefinitely and would be ongoing today.[11]

Here, as it does in other paragraphs of the Second Amended Complaint, Idearc makes no differentiation between Encore and the other Defendants. By its own terms, the

---

[10] These three claims are asserted against "All Defendants" in the Second Amended Complaint.
[11] Second Amended Complaint at ¶ 23 (emphasis added).

Second Amended Complaint makes allegations against Encore and the other Defendants as a group.

Idearc also notes that some of its claims are not asserted against Encore, either individually, or as a group with individual Defendants. There are five such claims: negligence/gross negligence, alter ego, conspiracy to defraud, civil RICO and conspiracy to commit civil RICO. All these claims are entirely intertwined with the actions of Encore.

In its negligence/gross negligence claim, Idearc alleges that "Defendants breached their duties to Idearc by, among other things, hiring and assigning work to employees that were unqualified, unwilling, and/or incompetent to perform the assigned tasks . . . ." and alleges the breach of other duties guaranteed by the Agreement. The duties described are those arising out of the performance of the Agreement by persons Encore hired to perform the Agreement. This claim is entirely intertwined with the conduct of Encore as an entity. In its alter ego allegations, Idearc contends that Encore is a sham corporation and that Defendant Stapel "maintains absolute control over Encore."[12] Although these allegations are merely a theory of relief, not an independent cause of action,[13] the assertion that Encore is an alter ego of Stapel makes the allegations against Stapel not simply intertwined with those against Encore, but rather, essentially the same. The conspiracy to defraud claim alleges that the individual Defendants "conspired by concerted action to obtain increased commission payments from Idearc by falsifying Encore's sales of Superpages.com advertising." Again, this is conduct entirely intertwined with the actions of Encore. Finally, the civil RICO claims center on the

---

[12] Second Amended Complaint at ¶ 81-83.
[13] *See Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990) (noting that the "mere fact that a corporation operates as an alter ego does not give rise to a separate and independent cause of action.").

Defendants' "regular and repeated use of the facilities and services of Encore . . ." to run a criminal enterprise. Essentially, the charge is that Encore was a vehicle for the Defendants' racketeering activity.[14] These are allegations undoubtedly intertwined with the actions of Encore. All of these claims, although not asserted against Encore, are intertwined with its conduct.

Idearc makes several other arguments. It attempts to distinguish this Court's decision in *Vartec, Inc. v. BCE, Inc.*, in which the Court conducted a *Grigson* analysis to determine whether nonsignatories to an agreement could invoke an agreement's forum selection clause.[15] Idearc claims that, unlike the plaintiff in *Vartec*, it has not conceded that its damages stem only from a breach of contract, but instead denies that "its tort claims against the Encore Executives and Austin depend in any way on Encore's breach of the Agreements" and urges that they "can stand separate and apart from the claims against Encore."[16] The Court agrees that *Vartec* does not control here. In *Vartec*, the plaintiff admitted that if the signatory defendant had fulfilled all its obligations under the contract at issue, there would be no claim against the nonsignatory defendants. That is not the case here. Further, the holding in *Vartec* was based on *Grigson's* first test, which the Court finds inapplicable here.[17]

However, the Court rejects the argument that Idearc's tort claims against the Encore Executives and Austin do not depend in any way on Encore's breach of the Agreement. The question is not whether the torts could theoretically stand apart from the breach of contract; rather, it is whether the plaintiff complains of "substantially

---

[14] The civil RICO allegations are made only against the Atlanta Managers. The pleadings make clear that the allegedly wrongful conduct by those managers is intertwined with Encore's. *See* Second Amended Complaint at ¶101-122.
[15] No. 3:02-CV-2585-M, 2003 WL 22364302 (N.D. Tex. Oct. 9, 2003) (Lynn, J.).
[16] Idearc's Response Brief at p.8.
[17] *Vartec*, 2003 WL 22364302 at *4.

8

interdependent and concerted misconduct," which it clearly does here. Idearc's Second Amended Complaint is rife with references as to how Encore and its employees acted together to commit mischief.

Idearc's citation of *Brown v. Pacific Life Ins. Co.* in support of this argument is also unpersuasive.[18] In *Brown*, the Fifth Circuit affirmed the grant of a motion to compel arbitration. The moving nonsignatory defendants had offered annuities to the plaintiff's securities broker. The district court found that the claims of fraud, negligence, and breach of common law and statutory duties asserted against the securities broker were "inexorably intertwined" with those asserted against the moving defendants because "[t]here is no way to bring actions against [the nonsignatories] without considering the actions of [the securities dealer]."[19] Here, the claims brought by Idearc do far more than "consider" the actions of Encore – each of them explicitly or implicitly requires the Court to evaluate Encore's conduct as well as that of the other Defendants. *Brown* imposes no additional requirements on the *Grigson* test, and that test is satisfied today.

---

[18] 462 F.3d 384 (5th Cir. 2006).
[19] *Id*. at 390.

*Conclusion*

In each of its claims, Idearc alleges substantially interdependent and concerted misconduct by both the nonsignatory Defendants and Encore. The alleged conduct of the Defendants arises directly out of the relationship created by the Agreement subject to arbitration, and the Court concludes that Idearc must arbitrate its claims against Defendants. The Motions to Compel Arbitration are therefore **GRANTED** and this case is **STAYED** and administratively closed pending the outcome of that arbitration.

**SO ORDERED**.

January 20, 2009.

*/s/ Barbara M. G. Lynn*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**